IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>NASSER A. LATIF,<br>a.k.a. "John Latif,"<br><br>*Defendant*. | Case No. 1:20-CR-1<br><br>Hon. Rossie D. Alston, Jr.<br><br>Sentencing: Dec. 1, 2021 |

## **POSITION OF THE UNITED STATES WITH RESPECT TO SENTENCING**

The defendant, Nasser Latif, comes before the Court for sentencing after pleading guilty to a two-count criminal information charging him with conspiracy to distribute synthetic cannabinoids, in violation of Title 21, United States Code, Sections 846, and possession with intent to distribute synthetic cannabinoids, in violation of Title 21, United States Code, Sections 841(a)(1), 813, and 802(32). The United States has no objection to the Probation Officer's calculations of the defendant's United States Sentencing Guidelines (the "Guidelines" or "U.S.S.G."), as set forth in the Presentence Investigation Report (PSR), ECF No. 29, in Part D.

Further, the United States agrees that the defendant has accepted responsibility and assisted authorities in the prosecution of his own misconduct by timely notifying the United States of his intention to enter a plea of guilty, thereby allowing the government to avoid preparing for trial and permitting the government and the Court to allocate their resources efficiently. The Probation Officer has already accounted for the defendant's acceptance of responsibility. PSR ¶¶ 49–50.

For the reasons set forth herein, as well as for the reasons set forth in the government's sealed memorandum, ECF No. 33, the United States respectfully submits that a sentence of no greater than 20 months' imprisonment is appropriate in this case.

## BACKGROUND

The defendant came to the attention of law enforcement in and around early 2017, when the Fauquier County Sheriff's Office ("FCSO") received multiple complaints about the 29 Express convenience store at the Valero gas station that the defendant and his business partner, Nader Noori-Moghaddam, owned and operated. Specifically, the complaints centered around the fact that the defendant and Noori-Moghaddam were selling synthetic cannabinoids, commonly referred to as "spice" or "K2," and that the spice was causing users to become severely ill. Indeed, at least one woman complained directly to the defendant that the spice was making her son "very sick," and asked the defendant not to sell her son any more spice. PSR ¶ 28.

Nevertheless, the defendant and Noori-Moghaddam were not dissuaded, and continued to peddle the spice, which they referred to as "incense" in their records. The spice was sold packaged in silver pouches bearing cartoonish logos, images, or brand names. A five-gram package of spice sold for approximately $53 including tax. PSR ¶ 29.

Based on the complaints, deputies from the FCSO opened an investigation into the defendant and Noori-Moghaddam. Investigators subsequently conducted a series of controlled purchases of spice from the Valero gas station, including the following:

| Date | Quantity | Purchase Price | Brand(s) | Substance |
|---|---|---|---|---|
| 04/03/2017 | One 5-gm pouch | $53 | Scooby Doo | FUB-AKB48 |
| 04/10/2017 | One 5-gm pouch | $53 | Scooby Doo | AB-FUBINACA |
| 05/25/2017 | Two 5-gm pouches | $106 | Scooby Doo, Diablo | AB-FUBINACA, 5-Fluoro-AMB |
| 09/14/2017 | Two 1-gm pouches | $74 | Bizarro, 24K Monkey | FUB-AMB, 5-Fluoro-AMB |

Each of the foregoing substances are Schedule I controlled substances.

On December 13, 2017, based on the previous eight months' investigation, law enforcement executed search warrants at the Valero gas station, as well as at the defendant's and Noori-Moghaddam's residences. PSR ¶ 32. At the Valero, investigators found approximately 544 pouches of spice hidden throughout the property, including in an ATM inside the convenience store, in a broken freezer chest, and in the trunk of an abandoned car parked out back. Law enforcement also seized a daily inventory ledger book in which the defendant and Noori-Moghaddam chronicled their daily spice sales; as well as bundles of receipts documenting the sales of the spice. PSR ¶ 23.

The investigation further revealed that from some time in 2016 through the end of 2017, the defendant and Noori-Moghaddam had been ordering their spice from a California-based business holding itself out as Aroma Superstore. Aroma Superstore—which openly sold spice on its website as "herbal incense"—was controlled by Joseph Ruis, Kimberly Drumm, and Bonnie Turner, all of whom have now pleaded guilty in a related case (1:20-CR-76).

On January 10, 2020, the defendant came before the Court and pleaded guilty to the two charges referenced above. The defendant has remained out on bond since that time, and it is the government's understanding that he has strictly complied with his conditions of release.

**SENTENCING ANALYSIS**

**I.      Law**

The Court consults both the Guidelines and the sentencing factors in 18 U.S.C. § 3553(a) to determine a defendant's appropriate sentence. Although the Guidelines are advisory, district courts are required to "consult those Guidelines and take them into account when sentencing." *United States v. Booker*, 543 U.S. 220, 264 (2005). Under the required procedures, a "district

court shall first calculate (after making the appropriate findings of fact) the range prescribed by the guidelines. Then, the court shall consider that range as well as other relevant factors set forth in the guidelines and those factors set forth in § 3553(a) before imposing the sentence." *United States v. Hughes*, 401 F.3d 540, 546 (4th Cir. 2005).

Section 3553(a) requires district courts to impose a sentence "sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection." Paragraph 2 lists four purposes for a sentence: (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner. 18 U.S.C. § 3553(a)(2). In addition to the purposes of sentencing listed in Section 3553(a)(2), a sentencing court must also consider: (1) the nature of the offense and the defendant's history and characteristics; (2) the kinds of sentences legally available; (3) the advisory sentencing range provided by the Sentencing Guidelines; (4) any relevant policy statement issued by the Sentencing Commission; (5) the need to avoid unwarranted sentence disparities; and (6) the need for restitution. 18 U.S.C. § 3553(a).

II.     **Guidelines Calculation**

With respect to the two counts of the criminal information, the Probation Officer has appropriately calculated a total offense level of 25 and criminal history category I for the defendant. PSR ¶¶ 51, 55. The base offense level based on drug quantity is 30, as stipulated in the defendant's plea agreement. PSR ¶¶ 4, 42. Two points are subtracted from the offense level because the defendant meets the criteria of U.S.S.G. § 5C1.2. PSR ¶ 43. The government

4

concurs with the Probation Officer's application of the two-level reduction for acceptance of responsibility under § 3E1.1(a), and in accordance with the plea agreement, hereby moves for the additional one-point reduction under § 3E1.1(b). PSR ¶¶ 4, 49–50. The defendant's total offense level of 25 and criminal history category I yields an advisory Guidelines range of 57–71 months of imprisonment. PSR ¶¶ 85–86.

### III. Section 3553(a) Analysis

Of the sentencing purposes described in 18 U.S.C. § 3553(a)(2), paramount in this case is the need for the defendant's sentence to afford adequate deterrence and to promote respect for the law, reflect the crime's seriousness, and provide just punishment. The defendant and his business partner distributed and possessed a significant quantity of spice, including Schedule I controlled substances, over a period of years, endangering people in the Eastern District of the defendant. "Experts warn that the popular term 'synthetic marijuana' is a misnomer, as the substances merely resemble marijuana but can be 100 times as potent."[1] Use of spice can lead to "[i]ncreased heart rate, vomiting, agitation, confusion, hallucinations, anxiety, paranoia, [and] increased blood pressure."[2] Individuals can overdose on spice and death can result.[3] Indeed, the circumstances

---

[1] Alan Schwarz, *Potent "Spice" Drug Fuels Rise in Visits to Emergency Room*, N.Y. Times, Apr. 24, 2015, *available at* https://www.nytimes.com/2015/04/25/health/surge-in-hospital-visits-linked-to-a-drug-called-spice-alarms-health-officials.html (last visited Nov. 22, 2021).

[2] National Institute on Drug Abuse, *Synthetic Cannabinoids (K2/Spice)* (*available at* https://www.drugabuse.gov/drug-topics/synthetic-cannabinoids-k2spice) (last visited Nov. 22, 2021).

[3] American Addiction Centers, *Spice Overdose and Side Effects* (available at https://americanaddictioncenters.org/synthetic-cannabinoids/overdose) (last visited Nov. 22, 2021); Devin Powell, Scientific American, Apr. 17, 2018, *available at* https://www.scientificamerican.com/article/the-spice-of-death-the-science-behind-tainted-synthetic-marijuana/ (last visited Nov. 22, 2021).

surrounding the death of J.S., who died of an overdose of spice purchased from William Walsh, another Aroma Superstore customer, illustrate precisely this danger. *See United States v. Joseph Ruis et al.*, 1:20-CR-76.

The United States is also mindful of the need to avoid unwarranted sentencing disparities between similarly situated defendants. 18 U.S.C. § 3553(a)(6). No other defendants involved in this case have been sentenced yet, so there is no direct comparison; however, there have been several other defendants in the Eastern District of Virginia sentenced in connection with spice distribution charges. One of the most directly comparable cases to this defendant's is *United States v. Lutgarda Miller*, 4:14-CR-7. In that case, the defendant was a 65-year-old store owner in Gloucester, Virginia, who sold synthetic cannabinoids out of her shop. Like Mr. Latif, the defendant in *Miller* sold controlled substances and controlled substance analogues to undercover investigators. 4:14-CR-7, ECF No. 45 ¶ 6. When law enforcement searched the shop, they found synthetic cannabioids and large quantities of case, *id.*, just like in this case. In *Miller*, the defendant's guidelines were 37–46 months, *see* 4:14-CR-7, ECF No. 64; the Court sentenced her to 40 months' imprisonment.

Here, as set forth in the government's sealed memorandum (ECF No. 33), there are circumstances present that apparently were not in the *Miller* case. Nevertheless, it is clear that a term of imprisonment for this defendant would not create an unwarranted sentencing disparity with other defendants sentenced for similar conduct in this District.

To the defendant's credit, he has no significant criminal history, PSR ¶¶ 53–55, and he evidently has a good relationship with, and support from, his wife and two children. PSR ¶¶ 63–65. It is clear as well that he has ample skills and vocational experience that would allow him to

pursue legal, gainful employment. Unfortunately, despite having ample opportunity to pursue legitimate ends, in this case, he and his business partner took a short-cut: they succumbed to the lure of quick and easy money selling a potentially deadly poison.

## CONCLUSION

For the reasons stated herein, as well as what has been previously filed in the government's sealed memorandum, the United States submits that a sentence of 20 months' imprisonment is sufficient but not greater than necessary to satisfy the sentencing factors in Section 3553(a).

Respectfully submitted,

Jessica D. Aber
United States Attorney

By: _____/s/_____
Katherine E. Rumbaugh
Bibeane Metsch
Assistant United States Attorneys

## CERTIFICATE OF SERVICE

I hereby certify that on November 24, 2021, I filed the foregoing with the Clerk of Court using the CM/ECF system, which will automatically send electronic notification of such filing to counsel of record in this case; and I will further forward an electronic copy to the U.S. Probation Officer assigned to the case.

/s/
Katherine E. Rumbaugh
Assistant United States Attorney
United States Attorney's Office
2100 Jamieson Avenue
Alexandria, Virginia 22314
Phone:   703-299-3700
Fax: 703-299-3982
Email: katherine.rumbaugh@usdoj.gov